**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Thomas Brice Velasco,<br><br>    Defendant. | No. CR 18-394-TUC-CKJ (DTF)<br><br>**ORDER** |

On April 18, 2019, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 55) in which he recommended the Motion to Suppress (Docs. 26 and 29) filed by Thomas Brice Velasco ("Velasco") be denied.[1] This Court referred the matter back to the magistrate judge for a supplemental report and recommendation regarding whether Velasco had a legitimate expectation of privacy in the place searched. On June 11, 2019, the Magistrate Judge Ferraro issued a supplemental Report and Recommendation ("Supp. R&R") (Doc. 76) in which he determined that Velasco lacks standing to contest the search and recommended the Motion to Suppress be denied.

Velasco has filed Objections to the Reports and Recommendations (Docs. 58 and 79) and the government has filed Responses (Docs. 63 and 80).

*Standard of Review*

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not

---

[1] Document 29 is entitled a Reply and Motion to Strike Government's Pleading.

review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

*Report and Recommendation – Factual Background*

Velasco asserts he did not, as the magistrate judge stated in the R&R, approach the officers from the Dodge truck's location. Velasco also asserts the magistrate court failed to consider that Officer May relayed to Officer Lopez that he had met with Trina Norris and reconfirmed that Velasco was the individual causing the disturbance. It appears Velasco is asserting the magistrate judge did not consider this information because it was not included in the factual summary.[2] The Court will consider these additional facts in conducting its review.

*Standing*

"A defendant has standing to challenge the legality of a search on Fourth Amendment grounds only if he has a 'legitimate expectation of privacy' in the place searched." *United States v. Zermeno*, 66 F.3d 1058, 1061 (9th Cir. 1995) (citations omitted); *see also United States v. Parks*, 285 F.3d 1133 (9th Cir. 2002). "The defendant bears the burden of establishing his legitimate expectation of privacy." *Zermeno*, 66 F.3d at 1061. "To demonstrate this, [a defendant] must manifest a subjective expectation of privacy in the area

---

[2] The Court recognizes that not every fact presented at an evidentiary hearing can be included in a factual summary and does not assume that the failure to mention these facts means the magistrate judge did not consider this evidence.

searched, and their expectation must be one that society would recognize as objectively reasonable." *United States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir. 1999).

The Supreme Court has determined an "overnight guest in another's home has a reasonable expectation of privacy for purpose of Fourth Amendment standing." *Minnesota v. Olson*, 495 U.S. 91, 96, 98 (1990). The magistrate judge stated:

> Critically, however, Defendant failed to specify the time and date that he lived in any space or room in New House #67. Defendant's failure to tie his residency at New House #67 to any date(s) and/or time period(s) is fatal to his claim that he had a reasonable expectation of privacy in any part of New House #67 on April 23, 2016.

Supp. R&R (Doc. 76, pp. 2-3).

Velasco asserts the magistrate judge erred in concluding he was not an overnight guest at the New House # 67 residence. Specifically, Velasco asserts the declaration of the owner of New House # 67, which states that Velasco and Velasco's girlfriend would stay at New House # 67 "for days, weeks, and sometimes months at a time[,]" Declaration (Doc. 79-1), supports a conclusion Velasco was an overnight guest. Further, Velasco had a key to New House # 67, he and his girlfriend stored their belongings at the residence, and Velasco supported the New House # 67 residence (e.g., purchased food for members of the house to share, performed household chores). Velasco also points out the government's disclosure states that Velasco and his girlfriend had been staying at House #67 at the time of his arrest.

However, a review of the Tohono O'odham Police Report referenced by Velasco does not specify when Velasco and his girlfriend "had been sleeping in the living room area." Objection, Ex. A (Doc. 79-1). Velasco describes an intermittent overnight guest status, with no showing that he spent the night before (or even a night within the preceding week or month) the officer looked into the vehicle. Velasco has not cited to any authority establishing an intermittent overnight guest has standing to contest a search. *See e.g. Minnesota v. Carter*, 525 U.S. 83, 96 (1998) (Scalia, J., joined by Thomas, J., concurring) (although overnight guest status may be at "the absolute limit of what text and tradition permit" under the Fourth Amendment, it is still within the limits of the Fourth Amendment).

The Supreme Court has determined that a defendant who was arrested at his friend's apartment during the execution of a search warrant could challenge the search of the apartment because he was "legitimately on [the] premises." *Jones v. United States*, 362 U.S. 257, 267 (1960) (overruled on other grounds by *United States v. Salvucci*, 448 U.S. 83 (1980)). However, in *Rakas v. Illinois*, 439 U.S. 128, 142-48 (1978), the Supreme Court rejected a "legitimately on [the] premises" standard as overly broad. 439 U.S. at 142–48, 99 S.Ct. 421. "Thus, an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Indeed, cases discussing whether an individual has a privacy interest based on being an overnight guest often consider whether the individual had spent the night preceding a search at the residence. *See e.g. United States v. Armenta*, 69 F.3d 304, 308 (9th Cir. 1995) (even where evidence was presented that defendant stayed in the house the night before the search, a legitimate expectation of privacy was not established); *United States v. Brooks*, No. 15-CR-6157G, 2016 WL 1749394, *4 (W.D.N.Y. May 2, 2016), report and recommendation adopted, No. 15-CR-6157-FPG-MWP, 2016 WL 3742318 (W.D.N.Y. July 7, 2016) (defendants were overnight guests the night before the warrant was executed); *Williams v. United States*, No. 3:15-CV-01301 (VLB), 2018 WL 4656231, at *2 (D. Conn. Sept. 27, 2018) (where defendant was at a casino the night before his arrest and not at residence, he was not an overnight guest as claimed, but was a casual guest); *United States v. Rogers*, No. 4:10-CR-00076, 2010 WL 11531402, at *1 (S.D. Iowa Sept. 23, 2010), aff'd, 661 F.3d 991 (8th Cir. 2011) (defendant was an overnight guest the evening before the search).

Here, it is not known when Velasco last spent the night at New House # 67 prior to the search. If the Court were to accept Velasco's argument that, because he periodically spends the night at the residence (along with permission of the resident, possession of a key, and contribution to the residence), he is an overnight guest, the Court would be ignoring the fact that it could have been weeks or months since Velasco last stayed at New House # 67. Considering this with Velasco's statement to Pretrial Services that he resided with his

girlfriend at West Artesia Road #3 in Little Tucson Village for the last six years, the Court finds Velasco has not sustained his burden to establish he was an overnight guest such that he had an expectation of privacy. The Court agrees with the magistrate judge and will adopt the magistrate judge's recommendation as to standing.

*Open Field/Curtilage and Exigent Circumstances/Emergency Doctrine*

Even if the Court were to conclude Velasco had standing to contest the search, the Court's analysis would not end there. As summarized by the magistrate judge, "curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." R&R (Doc. 55, pp. 3-4) (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987).

Velasco, however, argues that the magistrate judge failed to consider that the ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible. However, the magistrate judge did not state this fact was dispositive; rather, it was one of multiple factors to consider. Although Velasco argues *Collins v. Virginia*, 138 S. Ct. 1663, 1675 (2018), supports his assertion, Velasco fails to acknowledge the Supreme Court stated, "*[s]o long as it is curtilage*, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." In other words, only if a conclusion is reached an area is curtilage does the protection extend to the area, whether it can be seen or not.

In considering the *Dunn* factors, the magistrate judge stated:

> Although the property at New House #67 is in a residential neighborhood and it is surrounded by a three-foot-high chain link fence (See Exh. 64), vegetation is sparse and provides little, if any, privacy. The home is situated on a large lot. The Dodge truck was parked next to the chain link fence, away from the residence and facing the front yard of neighboring property. The aerial photographs received in evidence

- 5 -

> establish that the neighbor had an unobstructed view into the truck's passenger compartment. There appears to be a driveway between the truck and the house. The fencing around the property provided no privacy, except that it impeded people from walking through the backyard. The area where the truck was parked appeared to be used to park vehicles and the occupant did not take any steps to protect the area where the truck was parked from observation by people passing by. In short, the truck's location did not appear to be in an area intimately associated with the sanctity of the home and the privacies of life. *Dunn*, 480 U.S. at 300. (Doc 55, pg. 4).

R&R (Doc. 55, p. 6). The Ninth Circuit has recognized:

> "[O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance" and that, "as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be." [*Oliver v. United States*, 466 U.S. 170, 179 (1984). For these reasons, the Court concluded that "the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.'" *Id*.

*United States v. Roberts*, 747 F.2d 537, 541 (9th Cir. 1984).

Here, the truck was parked next to the chain link fence in an area that appeared to be used to park vehicles; it does not appear any steps were taken to protect the parking area from observation from people passing by. Indeed, the truck was facing the front yard of a neighboring property and photographs admitted at the first evidentiary hearing establish the neighbor had an unobstructed view into the truck's passenger compartment. The truck was parked in an open area, rather than in a carport, garage, or "an area immediately adjacent to the home[.]" *Oliver*, 466 U.S. at 180. Further, if this parking area was within the curtilage, the boundaries of the curtilage could conceivably extend to the entire property although the outer-limits of the area clearly were used for purposes (e.g. parking) that are not necessarily intimate activities of the residence.

Nonetheless, the Court agrees with the magistrate judge that it need not decide if this area was curtilage or an open field.[3] Rather, the search was justified under exigent circumstances and the emergency doctrine. Under the exigency exception to the warrant requirement, an officer may make a warrantless search if he has probable cause to believe that the item or place to be searched contains evidence of a crime and the officer is facing

---

[3]Because the Court declines to decide this issue, the Court need not decide if the automobile exception applies here.

exigent circumstances that require immediate police action. *United States v. Camou*, 773 F.3d 932, 940 (9th Cir. 2014). Exigent circumstances are defined as "'those circumstances that would cause a reasonable person to believe that entry [or search]. . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.'" *Id.* (quoting *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc) (overruled on other grounds). "To be reasonable, a search under this exception must be limited in scope so that it is 'strictly circumscribed by the exigencies which justify its initiation.'" *Id.* (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (1978)).

The emergency doctrine exception to the warrant requirement applies where officers are responding in their "community care taking function" to what they reasonably perceive as an emergency involving a threat to life or property. *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005). In order to justify a warrantless search under this doctrine: (1) the officers must have reasonable grounds to believe that there is an emergency and an immediate need for the assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *See id.*

The magistrate judge stated:

> Here, TOPD officers were on foot patrol in the defendant's neighborhood. They heard loud voices and then a gunshot. The officers immediately ran to the location of the shot. While in route their dispatch relayed concerning calls from others about the shot, which identified the defendant's address, New House #67, as the location of the disturbance. When the officers arrived, only minutes after they heard the gun shot, they had probable cause to believe the local offense of discharging a firearm in a residential community had been committed. There was an exigency because they did not know where the firearm was located and whether anyone had been shot. The defendant approached the officers, walking from the truck's location, as they arrived at his house. After the officers secured the defendant, Det. Scout made a cursory search of the property looking for a possible victim. Det. Scout walked directly to the Dodge truck and peered inside to see whether there was a gunshot victim. He saw ammunition in plain view. He continued around the property looking for a victim but did not enter the home or any of the outbuildings located in the immediate proximity to the house. This sweep only took minutes. When Det. Scout returned to the front, Officer Lopez said he had learned the defendant had been to prison. Armed with this

> additional information Det. Scout had probable cause to believe the ammunition in the defendant's [truck] was illegally possessed and he went back and seized it.

R&R (Doc. 55, pp. 5-6).

Although Velasco argues the officers did not see or hear anything from the property that would warrant the search, the officers had heard loud voices and a gunshot. Further, dispatch identified New House #67 as the location of the disturbance. When the officers arrived at the residence, Velasco approached them from the direction of the truck. Although Velasco asserts he walked out from the back door of the house, it appears from the evidence that, from the officers' vantage point, Velasco was coming from the area in which the truck was parked. *See* Exs. 66-D-1 and 66-F-1. This Court agrees with the magistrate judge that the officers had reasonable grounds to believe that there was an emergency and an immediate need for the assistance for the protection of life or property. Moreover, Detective Scout testified he was investigating whether there was a gunshot victim. The officers had identified this residence as associated with the gunshot and the person at this residence approached the officers from the direction of the truck. Although the officer failed to search the remainder of the property, the officer focused on where a possible victim or additional shooter would most likely be found based on the circumstances; indeed, because the officers had heard loud voices, it was reasonable for the officers to believe there may have been another shooter or victim in the area from where Velasco had approached the officers.

Furthermore, Velasco's reliance on *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993), is misplaced. In *Gooch*, the threat had occurred several hours before the search. Here, however, the residence had just been associated with the gunshot, Velasco had been identified as participating in the disturbance, and the officers had recently heard loud voices, indicating more than one person was possibly involved in the disturbance. Although Velasco argues the emergency had concluded because both the victim and perpetrator had been located, the information received from dispatch did not specify that the reporting victim was secure or that she was the only victim. Further, the information received from the reporting victim via Officer May did not specify the reporting victim was the only victim. The Court

finds there was a reasonable basis for the officers to believe there was an ongoing emergency and to associate that emergency with the truck. The Court agrees with the magistrate judge and will adopt the R&R.

Accordingly, after an independent review, IT IS ORDERED:

1. The Reports and Recommendations (Docs. 55 and 76) are ADOPTED.
2. The Motions to Suppress Evidence (Docs. 26 and 29) are DENIED.

DATED this 18th day of July, 2019.

_____
Cindy K. Jorgenson
United States District Judge